# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 18-4021-MWB |
| Plaintiff, | |
| vs. | **OPINION AND ORDER ON APPEAL OF MAGISTRATE JUDGE'S DETENTION ORDER** |
| DEIDRA LYNN OSBERG | |
| Defendant. | |

_____

**TABLE OF CONTENTS**

*I.    INTRODUCTION..................................................................................2*
   *A.    Indictment And Detention Proceedings...........................................2*
   *B.    The Appeal And Arguments .........................................................5*
*II.   LEGAL ANALYSIS .............................................................................7*
   *A.    Applicable Standards..................................................................7*
   *B.    Discussion................................................................................9*
*III.  CONCLUSION ................................................................................. 11*

A defendant charged with possession with intent to distribute methamphetamine appeals a magistrate judge's order that she be detained pending trial. The prosecution responds that the magistrate judge correctly concluded that the defendant was properly detained, on the ground that she is a danger to the community. However, the prosecution

disputes the magistrate judge's conclusions that the defendant rebutted the presumption of detention and that the prosecution failed to prove that the defendant was a risk of non-appearance and flight.

## I. INTRODUCTION
### A. *Indictment And Detention Proceedings*

A March 22, 2018, Indictment charges defendant Deidra Lynn Osberg with possessing with intent to distribute a methamphetamine mixture containing 5 grams or more of actual (pure) methamphetamine, on or about January 23, 2018, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). On April 5, 2018, counsel was appointed to represent Osberg, Osberg was arraigned on and pleaded not guilty to the single count of the Indictment, and Osberg was ordered detained pending a detention hearing on April 9, 2018. 04/05/18 Hearing Minutes; 04/05/18 Order Of Temporary Detention. A jury trial was initially scheduled for June 4, 2018, but the trial has since been continued to July 2, 2018. 04/06/18 Trial Management Order; 05/01/18 Order Continuing Trial. On April 6, 2018, the United States Probation Office filed a Sealed Pretrial Services Report.

On April 9, 2018, United States Magistrate Judge Kelly K.E. Mahoney held a detention hearing at which the prosecution sought Osberg's pretrial detention, Osberg offered evidence by way of a proffer to support her argument for pretrial release, and Judge Mahoney heard arguments from both parties. On April 9, 2018, Judge Mahoney entered an Order Of Detention Pending Trial remanding Osberg to pretrial custody.

Somewhat more specifically, on the record during the detention hearing, Judge Mahoney noted, "This is a bit of an unusual case or a bit of a difficult case." 04/09/18 Detention Hearing Transcript, 8:23-24; *see id.* at 14:13-14 (reiterating that this was "a close case"). Judge Mahoney noted that, although there was a presumption of detention, because Osberg was charged with a drug offense, Osberg had rebutted that presumption

based on the evidence that she had presented by way of a proffer. *Id*. at 8:24-9:6. Specifically, Osberg proffered that she has lived in the area since she was 18 years of age; that she has been disabled from a shoulder injury, received when she was 14 years old, and receives disability and Social Security benefits; that she has been living at the same address in Sibley, Iowa, for four years, and purported to be in the process of buying the house on contract; that, although she had some criminal history, she had no felonies involving violence; she had not been charged with conspiracy; she had previously had drug treatment; and she was amenable to further chemical dependency evaluation and a recommendation for treatment. *Id*. at 3:17-4:21.

Judge Mahoney then considered various relevant factors to determine whether the prosecution had, nonetheless, proved that Osberg should be detained. Judge Mahoney concluded that the fact that Osberg had been a member of the community for at least six years but had been in the area much longer were "positive aspect[s]." *Id*. at 9:10-14. Although Judge Mahoney observed that Osberg "doesn't have serious criminal convictions like you would often see in this type of case," her criminal history "evidences a pattern that she's either unable or unwilling to follow the law or comply with conditions." *Id*. at 9:15-20. Judge Mahoney did not give "much, if any, weight" to Osberg's findings of contempt for failure to pay fines, because Judge Mahoney considered that there might be reasons, including Osberg's disability, for not paying fines. *Id*. at 9:21-10:7. On the other hand, Judge Mahoney was concerned about "[Osberg's] arrests and convictions even for minor offenses—I mean, it started at age 25 [and she is now 46], and it has been steady and consistent since that time." *Id*. at 10:8-10:10. Judge Mahoney took note of Osberg's more serious convictions and her commission of offenses while on probation, because those facts "d[id] show that she wasn't able to follow or abide by those conditions [of probation]." *Id*. at 10:11-11:21.

3

Judge Mahoney originally concluded that Osberg "poses a risk of flight," and that she also was "a risk of danger to the community." *Id*. at 11:23-24. She found that Osberg posed a risk of flight, because she had "hardly any" significant contacts in the area, her family was not in the area, and she had little contact with her children. *Id*. at 12:5-13. Judge Mahoney later reversed her conclusion that Osberg posed a risk of flight, however, as follows:

> . . . I do find the government has met its burden . . . by a preponderance of showing — actually I don't find they've met their burden regarding risk of flight. I think that I could impose conditions such as electronic monitoring that would assure the safety of the — or assure the defendant's appearance, especially in light of the fact that even with a lengthy criminal history there's no indication she's failed to appear.

04/09/18 Detention Hearing Transcript at 14:16-15:2.

Judge Mahoney reiterated her conclusion that Osberg "poses a risk of danger based upon the nature of the alleged offense," however. Judge Mahoney based that conclusion on the fact that, even though the quantity of methamphetamine involved in the charged offense was not all that significant, "[d]rug possession with intent to distribute is a dangerous offense . . . to the community in general." *Id*. at 12:14-13:11. Turning to Osberg's history and characteristics, Judge Mahoney found that Osberg's history of substance abuse also weighed in favor of detention, as did her "not fully successful" treatment. *Id*. at 13:21-14:10.

Judge Mahoney summarized her conclusion that Osberg posed sufficient danger to warrant pretrial detention, as follows:

> All things considered, though, . . . I do find the government has met its burden by clear and convincing evidence of showing there are no conditions or combination

4

> of conditions that will assure the safety of the community. . . .
>
> [B]ased upon the nature of her prior convictions which include assault, drug possession, and a couple of felony offenses along with her repeated pattern of committing crimes or offenses while other charges are pending and the two times that she was on probation for a significant period of time — she violated those conditions in both instances — I find that she would not be able or likely to follow conditions of release. And, therefore, I will order she be detained pending trial.

04/09/18 Detention Hearing Transcript, 15:5-15:10.

### B. *The Appeal And Arguments*

On April 23, 2018, Osberg filed the Appeal Of Magistrate's Detention Order now before me. Her argument on appeal, in its entirety, is as follows:

> Here, the Magistrate correctly determined that Osberg did not pose a flight risk because she had long-standing ties to the community and health problems which kept her mobile [sic]. The Magistrate erred, however, in finding Osberg to be a danger to the community. Although Osberg has an admittedly lengthy criminal history, the Government acknowledged that her convictions are largely for minor offenses such as traffic violations. (Detention TR, 5:16-17.) Furthermore, Osberg's sole conviction involving force, misdemeanor assault, was many years old and should not have been given great weight to the pending case involving a non-violent drug offense. The Magistrate found Osberg posed a danger because of her history of substance abuse, but failed to consider that she voluntarily wished to undergo substance abuse evaluation and treatment. Osberg does not pose a danger to the community. Her criminal history is minor and largely non-violent, and she is willing to seek help for her

5

> substance abuse problem, which would help mitigate the danger of her future involvement with controlled substances.

Defendant's Appeal, 2-3.

In a Resistance And Brief In Opposition To Defendant's Appeal Of The Detention Order, the prosecution argues that I should deny Osberg's appeal. The prosecution argues that there are three reasons for doing so: (1) contrary to Judge Mahoney's conclusion, Osberg *did not* present sufficient evidence to rebut the presumption of detention under 18 U.S.C. § 3142(e)(3)(A); (2) as Judge Mahoney concluded, the prosecution *did* establish by clear and convincing evidence that Osberg is a danger to the community; and (3) again contrary to Judge Mahoney's conclusion, the prosecution *did* establish by a preponderance of the evidence that Osberg poses a risk of non-appearance and flight.

As to the argument that Osberg did not rebut the presumption, the prosecution argues that Osberg's proffer fails to address her extensive criminal history or her repeated violations of probation. The prosecution also argues that Osberg's ties to the community are very limited. The prosecution contends that Osberg's representation that she is amenable to substance abuse treatment does little to displace any concerns regarding the danger she poses to the community based on her admission that she no longer uses controlled substances. Even if Judge Mahoney correctly concluded that Osberg had rebutted the presumption of detention, however, the prosecution argues that the court can continue to consider as a relevant factor that the law imposes a rebuttable presumption of detention in cases like this one.

As to danger to the community, the prosecution lays out Osberg's lengthy criminal history, then argues that Judge Mahoney correctly found that criminal history evidences a pattern that Osberg is either unable or unwilling to follow the law or comply with conditions. The prosecution argues that Osberg's claim that the prosecution had

acknowledged that her convictions were largely minor, such as traffic violations, is misleading. Rather, the prosecution made clear that Osberg's criminal history was not just driving violations, and that even the driving violations indicate a clear unwillingness to adhere to the rule of law, especially when one notes the times in which Osberg commits the same criminal conduct. The prosecution also points to Osberg's history of probation violations and the aggravating nature of several of her criminal offenses and probation violations.

Finally, as to its contention that Osberg *is* a risk of nonappearance and flight, the prosecution relies on the nature of the offense charged and Osberg's lack of stable employment or significant ties to the community. The prosecution also highlights Osberg's lack of family ties in the area—or at all. The prosecution also points out that the United States Probation Office was unable to confirm Osberg's claim that she is buying her house, but has confirmed that she has no assets, no liabilities, and a monthly cashflow of only $10, that she has not held lawful employment for the past twenty-five years, and that she only began receiving disability payments in 2014.

## II. *LEGAL ANALYSIS*
### A. *Applicable Standards*

As the Eighth Circuit Court of Appeals has explained, "A defendant may move for review by the district court of a pretrial detention order entered by a magistrate." *United States v. Foote*, 898 F.2d 659, 664 (8th Cir. 1990) (citing 18 U.S.C. § 3145(b)). The applicable statute provides that "[t]he motion [for review] shall be determined promptly." 18 U.S.C. § 3145(b). I have conducted the required review as promptly as my schedule permitted after completing a six-day criminal trial in another district on May 14, 2018. *Cf. United States v. Maheshwari*, 358 F. App'x 765, 767 (8th Cir. 2010) (although a delay of "several months" before a district court conducted a review of a

7

magistrate judge's order was "significant," that delay resulted from an oversight and did not require any remedy). The Circuit Courts of Appeals to consider the question agree that the district court reviews a magistrate judge's pretrial detention order *de novo*. *United States v. Rueben*, 974 F.2d 580, 585-86 (5th Cir. 1992); *United States v. Koenig*, 912 F.2d 1190, 1192-93 (9th Cir. 1990); *United States v. King*, 849 F.2d 485, 489-90 (11th Cir. 1988); *United States v. Perry,* 788 F.2d 100, 102 (3d Cir. 1986); *United States v. Williams*, 753 F.2d 329, 334 (4th Cir. 1985). In conducting such a *de novo* review, I am not required to conduct a *de novo* detention hearing, but need only conduct a *de novo* review of the transcript of any hearing before the magistrate judge. *King*, 849 F.2d at 490; *Williams*, 753 F.2d at 334. In this case, I have reviewed the transcript of the detention hearing before Judge Mahoney, the Pretrial Services Report, and the parties' written submissions.

As the Eighth Circuit Court of Appeals has explained,

> A defendant may be detained before trial "[o]nly if the government shows by clear and convincing evidence that no release condition or set of conditions will *reasonably assure* the safety of the community and by a preponderance of the evidence that no condition or set of conditions … will *reasonably assure* the defendant's appearance …." *United States v. Kisling*, 334 F.3d 734, 735 (8th Cir. 2003) (quoting *United States v. Orta*, 760 F.2d 887, 891 (8th Cir. 1985) (en banc); 18 U.S.C. § 3142(c), (e)-(f)).

*United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003). If there was probable cause that the defendant committed certain offenses "a statutory rebuttable presumption arises 'that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community.'" *Id*. (quoting 18 U.S.C. § 3142(e)(2)). Here, Osberg is charged with a Controlled Substances Act offense with a maximum term of imprisonment of ten years or more, for violation of 21 U.S.C.

§§ 841(a)(1) and 841(b)(1)(B), which invokes the presumption. 18 U.S.C. § 3142(f)(1) (defining the offenses to which the rebuttable presumption of detention applies). The parties do not dispute that the rebuttable presumption applies in this case.

As the Eighth Circuit Court of Appeals has also explained,

> In determining if release conditions exist that will reasonably assure the appearance of a defendant at trial and the safety of the community, the court considers the following: (1) the nature and circumstances of the crime; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including mental condition, family ties, employment, community ties, and past conduct; and (4) the seriousness of the danger to the community or to an individual. 18 U.S.C. § 3142(g). "In a presumption case such as this, a defendant bears a limited burden of production—not a burden of persuasion—to rebut that presumption by coming forward with evidence he does not pose a danger to the community or a risk of flight." *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir.2001). "Once a defendant has met his burden of production relating to these two factors, the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court." *Id*.

*Abad*, 350 F.3d at 797.

### B. Discussion

Upon *de novo* review, *see, e.g., Rueben*, 974 F.2d at 585-86 (standard of review), I agree with Judge Mahoney that this is a "difficult" and "close" case, not least because of the closeness of the question of whether or not Osberg met her burden of production—not persuasion—to rebut the presumption of detention. *Abad*, 350 F.3d at 797. Osberg had to come forward with evidence that she does not pose a danger to the community or a risk of flight. *Id*. Here, like Judge Mahoney, I conclude that Osberg met her burden

9

via her proffer that she has lived in the area since she was 18 years of age; that she has been disabled from a shoulder injury, received when she was 14 years old, and receives disability and Social Security benefits; that she has been living at the same address in Sibley, Iowa, for four years; that, although she has some criminal history, she has no felonies involving violence; she has not been charged with conspiracy; she has previously had drug treatment; and she is amenable to further chemical dependency evaluation and a recommendation for treatment. *Id*. at 3:17-4:21. Although Osberg's assertion that she is buying her house is not entirely credible, in light of her financial circumstances and the lack of verification by the Probation Office, that does not negate the other elements of her proffer. Moreover, I can continue to consider the presumption as "a factor to be considered among those weighed by the district court." *Abad*, 350 F.3d at 797 (internal quotation marks and citation omitted).

I also agree with Judge Mahoney, however, that the prosecution met its ultimate burden to prove by clear and convincing evidence that Osberg poses a risk to the safety of the community that makes her pretrial detention appropriate. *Abad*, 350 F.3d at 797. This is so, because I agree with Judge Mahoney that Osberg would not be able or likely to follow conditions of release. Judge Mahoney carefully and thoroughly reviewed and weighed the implications of Osberg's criminal history and her personal characteristics, including the nature of Osberg's prior convictions, which include assault, drug possession, and two felony offenses; Osberg's repeated pattern of committing crimes or offenses while other charges are pending; and that the two times Osberg was on probation for a significant period of time, she violated the conditions of her probation. 04/09/18 Detention Hearing Transcript, 15:5-15:10; *see also* 18 U.S.C. § 3142(g) (listing factors); *Abad*, 350 F.3d at 797 (same). In light of these factors, I agree with Judge Mahoney that Osberg would not be able or likely to follow conditions of release, so that her pretrial detention is warranted. *Id.* To put it another way, although the factors in her history to

which Osberg points might be sufficient to rebut the presumption that detention is appropriate, they are not sufficient to warrant pretrial release. Rather, the prosecution has shown by clear and convincing evidence that no release condition or set of conditions will *reasonably assure* the safety of the community. *Abad*, 350 F.3d at 797; 18 U.S.C. § 3142(e).

Because I conclude, on *de novo* review, that Osberg's pretrial detention is warranted on this ground, I need not consider the prosecution's argument that Judge Mahoney erred in concluding that the prosecution had not met its burden to prove by the preponderance of the evidence that Osberg is a flight risk. *Abad*, 350 F.3d at 797 (alternative ground for detention).

## III. CONCLUSION

Upon *de novo* review, I **affirm** Judge Mahoney's April 9, 2018, Order that Osberg be detained pending trial.

**IT IS SO ORDERED**.

**DATED** this 18th day of May, 2018.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA